IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Cr.A. No. 07-135-SLR |
| MIZRAIN GONZALEZ, | : | |
| Defendant. | : | |

**SENTENCING MEMORANDUM SUBMITTED
ON BEHALF OF DEFENDANT MIZRAIN GONZALEZ**

**COMES NOW,** Defendant Mizrain Gonzalez by and through his attorney, John S. Malik, and respectfully requests that this Honorable Court grant Defendant Gonzalez a downward Sentencing variance[1] or Sentencing departure based upon the following grounds:

A.  **Introduction.**

1.  Sentencing in the above captioned criminal case is scheduled for Tuesday, August 5, 2008 at 4:30 P.M. in the United States District Court for the District of Delaware before the Honorable Sue L. Robinson. Defendant Gonzalez is to be sentenced on one count of Possession with Intent to Distribute Heroin in violation of 21 U.S.C. § 841(a)(1) and one count of Possession of a Firearm During a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c). As calculated in the Presentence Report, Defendant Gonzalez's guideline range of sentence on the Possession with Intent to Deliver Heroin charge is 30 to 37 months based on a Base Offense Level of 15 and a Criminal History

---

[1] See United States v. Vampire Nation, 451 F.3d 189 (3rd Cir. 2006), ruling that a post Booker discretionary sentence not based on a specific Guidelines departure provision is known as a Sentencing "variance". Id. at 195, n. 2, citing United States v. Sitting Bear, 436 F.3d 929, 932-933 (8th Cir. 2006).

Category of III. (PSR at § 58). Furthermore, in addition to any period of incarceration Mr. Gonzalez may receive on the aforementioned heroin offense, he must be sentenced to a consecutive ten year mandatory term of incarceration on the firearm charge.[2]

**B.    Factors to be Considered Pursuant to 18 U.S.C. § 3553(a).**

2.    In United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the United States Supreme Court held that the United States Sentencing Guidelines are advisory only and are not mandatory. Consequently, the factors set forth in 18 U.S.C. § 3553(a) must be considered by a district court in fashioning a sentence for a defendant.[3] These factors include: the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to promote respect for the law, and the need to avoid unwarranted sentencing disparities.[4] Post-

---

[2]    See 18 U.S.C. 924(c)(1)(B)(i), which states:

> **(B)**    If the firearm possessed by a person convicted of a violation of this subsection-
>
> > **(i)**    is a short-barreled rifle, short-barreled shot-gun, the person shall be sentenced to a term of imprisonment of not less than 10 years….

[3]    See United States v. Vampire Nation, supra at 195-196, holding that the Guidelines are now advisory; that post-Booker, district courts exercise broad discretion in imposing sentences, so long as they begin with a properly calculated Guidelines range of Sentence and fully consider the broad variety of factors set forth in 18 U.S.C. § 3553(a) as well as all grounds advanced by the parties at Sentencing; and, that a district court may exercise discretion to vary from a Sentence under the Guidelines in a way that is not based on a specific Guidelines departure provision.

[4]    In pertinent part, 18 U.S.C. § 3553(a) reads as follows:

> (a)    **Factors To Be Considered in Imposing a Sentence.** - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2)    the need for the sentence imposed—

[2]

Booker, a district court may now consider a virtually unlimited number of potential mitigating factors.[5] This truly discretionary approach to Guidelines Sentencing was approved last year by the United States Supreme Court in Gall v. United States, 552 U.S. --- , 128 S.Ct. 586, --- L.Ed.2d --- (2007), where a district court's downward departure from a Guideline Range of Sentence of 30 to 37 months of incarceration to 36 months of probation in a Distribution of Ecstasy case was held to constitute a proper exercise of the district court's Sentencing discretion; and, in Kimbrough v. United States, 552 U.S. ---, 128 S.Ct. 558, --- L.Ed.2d --- (2007), where a district court's downward departure from a Guideline Range of Sentence of 168 to 210 months of incarceration to 120 months of incarceration in a Possession with Intent to Distribute in Excess of 50 grams of Crack

---

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and,

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for—

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines….

(5)    any pertinent policy statement….

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,

(7)    the need to provide restitution to any victims of the offense.

[5]    See Koon v. United States, 518 U.S. 81, 106 (1996), and United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999).

Cocaine case also was held to be a proper exercise of the district court's Sentencing discretion.

      3.      Pursuant to the decision in <u>Booker</u>, district court judges have the authority to deviate from the guidelines either upwards or downwards. The <u>Booker</u> Court clearly acknowledged that each individual defendant cannot always be sentenced in accordance with a statutory guideline. Each case has its own merits or flaws and each defendant has their own level of culpability. In fact, it has been held that the Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom."[6]

**C.**     **<u>Defendant Gonzalez' Family Responsibilities</u>**.

      4.      As indicated in the Pre-Sentence Report, Mr. Gonzalez has substantial local family ties and responsibilities. (See PSR at §§ 40-47). He has three younger siblings who live in the Wilmington area, namely, Javier Gonzalez, age 23; Esmerelda Gonzalez, age 23; and Jacquelyn Gonzalez, age 22. Most importantly, Mr. Gonzalez has an 8 year old daughter, Raina McKenzie, of whom Mr. Gonzalez has full custody, and a 2 year old son, Mizrain Gonzalez, III, of whom Mr. Gonzalez has full custody together with his son's mother and his fiancé, Ms. Tasha Brown. Raina presently resides with her grandmother, Ms. Jacquelyn Rodriguez, and suffers from diabetes for which she takes insulin. Mizrain currently resides with his mother, Ms. Tasha Brown. Despite being incarcerated, Defendant Gonzalez continues to maintain a close relationship with Ms. Brown who brings both Raina and Mizrain regularly to visit their father at the Salem County Correctional Facility. Although the Court cannot depart from the mandatory minimum ten year sentence on the firearm charge, Defendant Gonzalez requests that the

---

[6]    See <u>United States v. Dominguez</u>, 296 F.3d 192, 196 (3rd Cir. 2002).

[4]

Court consider the future needs of his daughter, Raina, and his son, Mizrain, when fashioning an appropriate Sentence and depart or vary downward from the 30 to 37 months Guideline Range of Imprisonment on the heroin charge to a six month period of home confinement upon his release from incarceration followed by a period of supervised release.

**E.     Substance Abuse and RDAP**.

5.     As indicated in the Pre-Sentence Report, Mr. Gonzalez reports past use of marijuana and PCP. While on Delaware State probation in 2006, Mr. Gonzalez tested positive for marijuana and PCP on separate occasions. (PSR at §§ 50-51). Mr. Gonzalez has expressed an interest in participating in a substance abuse treatment program while in prison. Accordingly, it is respectfully requested that the Court recommend that Mr. Gonzalez participate in the Residential Drug and Alcohol Program, (RDAP), as a part of his sentence.

**F.     Offense Conduct**

6.     Defendant Gonzalez does not intend to downplay the seriousness of his offense conduct and he is remorseful that he sold drugs to support his family rather than to continue working in low-paying jobs due to his lack of secondary education or vocational training. Faced with the inevitability of the ten year mandatory term of incarceration that he must serve on the firearm offense, Mr. Gonzalez stated during his Presentence Interview that, "…he would rather not have any money, and be at liberty with his two children, than in this predicament." (PSR at § 16). Again, although the charged offenses are serious, Mr. Gonzalez's Guideline Range of Sentence on the heroin charge alone would have required only a two and one half to three year period of

incarceration.  However, the Court is deprived of any Sentencing discretion by statute with respect to the attendant firearm offense since 18 U.S.C. § 924(c)(1) compels the Court to impose the mandatory ten year sentence on the firearm charge since the weapon in question was a short-barreled shotgun.  Recognizing that any firearm offense is extremely serious, Defendant Gonzalez notes that his adult criminal history does not include any arrest or conviction history for offenses alleging physically violence or assaultive conduct.  The shotgun in question was not brandished, but was merely present in Mr. Gonzalez' home in the area where the heroin was found.  Since the shotgun had a short barrel, the normal five year mandatory sentence for firearms possession in connection with a drug offense is doubled to a ten year mandatory sentence.  It is Mr. Gonzalez' contention that a total sentence of ten years is highly punitive and sends a message to the community that possession of a firearm during a drug offense is something that will result in an extremely harsh sentence.  Accordingly, Mr. Gonzalez prays that a Sentencing variance or departure be granted in the case <u>sub</u> <u>judice</u> from his 30 to 37 month range of Sentence on the heroin charge to home confinement and supervised release only in light of the ten year mandatory sentence this Court must impose on the firearm offense.

**G.    Defendant Gonzalez Was Exposed To Domestic Violence as a Child.**

7.    During his childhood, Mr. Gonzalez unfortunately was exposed to significant domestic violence in his home.  Mr. Gonzalez' mother, Ms. Jacqueline Rodriguez, stated in her Presentence Report interview that Mr. Gonzalez father would regularly beat her and these beatings were witnessed by Mr. Gonzalez and his siblings.  (PSR at § 42.)  Mr. Gonzalez personally recounted during his Presentence Investigation

Interview that on one occasion, he watched as his father pushed his mother down a flight of stairs that resulted in Ms. Rodriguez breaking both her wrists in the fall. (PSR at § 40). The Court can consider a defendant's troubled upbringing and his exposure to domestic violence as a child as a potential basis for a Sentencing variance or departure.[7] It is submitted that the environment rife with domestic violence in which Mr. Gonzalez was raised may have contributed to his involvement with the criminal justice system and thus warrants a downward Sentencing variance or departure from the 30 to 37 month range of Sentence Mr. Gonzalez faces on the Possession with Intent to Deliver Heroin charge.

H.      **Defendant Gonzalez' Post Offense Rehabilitation Efforts.**

8.      While incarcerated on pretrial detention pending the resolution of the subject case, Mr. Gonzalez has utilized his time at the Salem County Correctional Facility as constructively as possible. Specifically, Mr. Gonzalez has participated in the Salem County Correctional Facility's GED Program and has successfully passed sections of the GED examination.[8] These efforts by Mr. Gonzalez are significant and are to be lauded especially in light of the fact that his childhood education ended with Mr. Gonzalez completing only the eighth grade. (PSR at § 52). Prior to his incarceration,

---

[7]     See United States v. Lopez, 938 F.2d 1293, 1298 (D.C.Cir. 1991), upholding the district court's downward Sentencing departure and finding that a district court has discretion to take account of a defendant's background of domestic violence provided that the district court makes the necessary findings to support its decision; and, Penry v. Lynaugh, 492 U.S. 302, 319 (1989), holding that evidence about a defendant's background is relevant because of the belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems may be less culpable than defendants who have no such excuse."

[8]     Attached hereto as Exhibit "A" is a copy of a letter dated June 13, 2008 from Mrs. Angel Brown of the Salem County Correctional Facility GED Program and a copy of Mr. Gonzalez' transcript from the Salem County Vocational and Technical Schools Adult Education and Literacy Program. Mrs. Brown indicates that Mr. Gonzalez has passed sections of the GED examine and that he will be eligible to take the GED test when it is next administered on September 22 and 23, 2008.

Mr. Gonzalez had taken night courses at the James H. Groves Adult High School from 2004 through 2008 where he was rated by his teachers as being an average to good student. (PSR at 53). Mr. Gonzalez' continued post-offense efforts at personal rehabilitation provide a basis for a Sentencing variance or departure from his Guideline range Sentence of 30 to 37 months. Various pre-<u>Booker</u> and post-<u>Booker</u> cases have recognized post-offense rehabilitation as an appropriate basis for a Sentencing variance or departure.[9]

**J.    Character Reference Letters.**

9.     A number of individuals have written character reference letters on behalf Mr. Gonzalez.[10] Specifically, the following persons provided letters:

- Ms. Tasha Brown – fiancé.

---

[9] See: <u>United States v. Chapman</u>, 356 F.3d 843, 848-849 (8th cir. 2004), holding that post-offense rehabilitation can support a downward departure based upon U.S.S.G. § 5K2.0 if the defendant's efforts are sufficiently exceptional to be considered atypical and cases that warrant a departure must fall outside of the "heartland" of the guidelines; <u>United States v. Newlon</u>, 212 F.3d 423, 424 (8th Cir. 2000), finding downward departure under the Guidelines based on defendant's atypical rehabilitation efforts was warranted where prior to his arrest, at his own request, the defendant spend 85 hours over a period of 20 days in a substance abuse treatment program, his state probation officer indicated that he was "doing well", his counselor reported that defendant had sincere desire for treatment, and his family noted a marked improvement in his behavior and attitude; <u>United States v. Cornielle</u>, 171 F.3d 748, 753-754 (2nd Cir. 1999), affirming limited downward departure granted by district court from 10 to 16 month range of Sentence to 8 to 14 month range of Sentence based in part upon defendant's post-offense rehabilitation as well as four year delay in bringing perjury charges against defendant; <u>United States v. DeShon</u>, 183 F.3d 888, 889-890 (8th Cir. 1999), ruling that district court did not abuse its discretion in departing downward in an income tax evasion and money laundering case from a Guideline Sentencing range of 30 to 36 months imprisonment to 5 months of community confinement without work release on the basis of the defendant's post offense rehabilitation about which witnesses testified that defendant had renewed his life in the church and was making extraordinary efforts to turn his life around; <u>United States v. Whitaker</u>, 152 F.3d 1238, 1239 (10th Cir. 1998), holding that exceptional efforts at post-offense drug rehabilitation could be considered an appropriate basis for a downward Sentencing departure; and, <u>United States v. Sally</u>, 116 F.3d 76, 80-81 (3rd Cir. 1997), holding that post-offense as well as post-conviction rehabilitation efforts may serve as a basis for a downward departure from a Guidelines range of sentence provided that the rehabilitation efforts are so exceptional so as to remove a particular case from the heartland in which the acceptance of responsibility guideline was intended to apply. But see also, <u>United States v. Monteiro</u>, 417 F.3d 208 (1st Cir. 2005), holding that defendant's post-offense rehabilitation was not sufficient for departure and that departures on this ground should be considered "hen's teeth rare".

[10] Attached hereto as Exhibit "B" are copies of the character reference letters submitted by the individuals listed above.

- Ms. Esmerelda I. Gonzalez – sister.

- Ms. Jackie Gonzalez – sister.

- Ms. Judith I. Rodriguez – aunt.

- Pastor Alejandro Lind – friend and pastor.

- Ms. Luz Divina Diaz – family friend.

In their letters, Mr. Gonzalez' family members and friends speak of him as a kind and warm-hearted person, a loving brother and nephew, a caring father who is very family oriented, and a person who in the past has worked hard and held down legitimate jobs. It is requested that these character reference letters and the positive traits of Mr. Gonzalez that are discussed therein be considered by the Court prior to Sentencing.

**K.    Totality of the Circumstances.**

10.    Defendant Gonzalez submits that based upon the numerous mitigating factors set forth herein, this Court should consider the totality of the circumstances of this case since the Court is permitted to do so in crafting a Sentence that is sufficiently punitive, yet not excessive.[11]  In fact, the Court may even act sua sponte recognizing a district court's inherit authority to depart from the Guidelines when it deems it appropriate.[12]  In light of the totality of the circumstances of the subject case, Mr. Gonzalez maintains that a total Sentence of ten years is appropriately punitive, underscores the seriousness of the instant offense conduct, and does not depreciate the

---

[11]    See United States v. Delgado, 994 F.Supp. 143 (E.D.N.Y. 1998), granting a three level downward departure based on a first time offender drug courier under pressure from creditors and in combination with other circumstances such as aberrant behavior, fragility, and an exceptionally difficult life.

[12]    See United States v. Williams, 65 F.3d 301, 309-310 (2d Cir. 1995), holding that the Guidelines do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process.

[9]

gravity of his offense conduct. For these reasons, Mr. Gonzales prays that he be granted a Sentencing variance or departure in the case at bar.

G. **Conclusion**.

12. Based upon the foregoing facts and legal authorities, Defendant Mizrain Gonzalez requests that he be granted a downward Sentencing variance or departure, specifically, that the Court sentence him to the minimum mandatory term of 120 months. Furthermore, Defendant Gonzalez respectfully requests that this Court make a recommendation to the Bureau of Prisons that he be designated to the Federal Correctional Facility at Fairton, New Jersey or to another Federal Correctional Facility close to Wilmington, Delaware so that he may have regular visits with his family and minor children.

**WHEREFORE**, Defendant Mizrain Gonzalez respectfully requests that this Honorable Court grant a downward Sentencing variance or departure in the subject criminal action to a one month term of incarceration on the Possession with Intent to Deliver Heroin charge.

Respectfully submitted,

/s/ John S. Malik
JOHN S. MALIK
100 East 14th Street
Wilmington, Delaware 19801
(302) 427-2247
Attorney for Defendant,
Mizrain Gonzalez

Dated: July 22, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Cr.A. No. 07-135-SLR |
| MIZRAIN GONZALEZ, | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE**

    I, John S. Malik, attorney for Defendant Mizrain Gonzalez do hereby certify that on this 24th day of July, A.D., 2008, I have had the attached Sentencing Memorandum Submitted on Behalf of Defendant Mizrain Gonzalez served electronically, and via e-mail upon the individual listed below at the following address:

        Lesley F. Wolf, Esquire
        Assistant United States Attorney
        United States Attorney's Office
        Nemours Building
        1007 Orange Street, 7th Floor
        Wilmington, Delaware 19801

        /s/ John S. Malik
        JOHN S. MALIK
        100 East 14th Street
        Wilmington, Delaware 19801
        (302) 427-2247
        Attorney for Defendant,
        Mizrain Gonzalez



**Salem County Correctional Facility
ABE/GED/ESL Program**

June 13, 2008

To: Mizrain Gonzalez

The GED/ABE class has ended for the academic school year. Classes will resume in September 2008. Students who were enrolled until class ended in June will have first priority when class resumes in September. You must re-submit the Inmate Request Form (the blue form) and be re-interviewed. The first GED exam will be offer September 22 and 23, 2008.

You have worked hard in class and have made progress. You have passed sections of the GED exam. Keep studying and reading over the summer break.

Signed,

*Mrs Brown*

Mrs. Angel Brown
GED Instructor

125 Cemetery Road  Woodstown  NJ  08098         856-769-4300

**SALEM COUNTY VOCATIONAL TECHNICAL SCHOOLS**
**ADULT EDUCATION AND LITERACY**

Individual Student Attendance Report Form For FY: __2007-2008__

Facility: Salem County Correctional Facility    Instructor: Angel Brown

Program Type: correctional facility

Name: Mizrain Gonzalez    SS#: 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

TEST SCORES

Start Date: 11/26/2007    Reading: 9.4    Math: 12.9
Retest Dates: ____    Reading: ____    Math: ____
Exit Date: 6/13/2008    Reading: ____    Math: ____

| Day / Month | July 1st Quarter | Aug | Sept | Oct 2nd Quarter | Nov | Dec | Jan 3rd Quarter | Feb | Mar | April 4th Quarter | May | June |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 2.0 | | | | | |
| 2 | | | | | | | | | | | | |
| 3 | | | | | | 1.5 | | | | | | 2.0 |
| 4 | | | | | 1.5 | | 1.5 | | | | | |
| 5 | | | | | | | | | | | | |
| 6 | | | | | | | | 1.5 | | | | |
| 7 | | | | | 3.0 | 1.5 | | 2.0 | | | | |
| 8 | | | | | | 3.0 | | | | | | |
| 9 | | | | | | | | | | | | 2.0 |
| 10 | | | | | 2.0 | | | | 1.0 | | | 2.0 |
| 11 | | | | | | 1.5 | | | | | | |
| 12 | | | | | | | | | | | | |
| 13 | | | | | 1.5 | | | | | | | 1.0 |
| 14 | | | | | 3.0 | 3.5 | 2.0 | | | | | END |
| 15 | | | | | | 2.0 | | | | | | |
| 16 | | | | 1.5 | | | | | | | | |
| 17 | | | | | | | | | | | | |
| 18 | | | | | | 1.5 | | | | | | |
| 19 | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | |
| 21 | | | | 1.5 | | | | | | | | |
| 22 | | | | | | | | | | | 2.0 | |
| 23 | | | | | | | | | | | 1.5 | |
| 24 | | | | | | 1.0 | | | | | | |
| 25 | | | | | | 1.0 | | | | | | |
| 26 | | | | 1.5 | | | | | | | | |
| 27 | | | | | | | | | | | | |
| 28 | | | | | | | 1.5 | | | | | |
| 29 | | | | | | 2.0 | | | | | 2.0 | |
| 30 | | | | | | | | | | | | |
| 31 | | | | | | 1.5 | | | | | | |
| Monthly Totals | 0 | 0 | 0 | 0 | 3 | 13 | 20 | 7 | 4 | 1 | 6 | 6 |
| Quarterly Totals | 0 | | | 16 | | | 31 | | | 13 | | |

**Program Enrollment Type**
(Circle One)

ABE Beg. Literacy
ABE Beg. Basic Ed.
ABE Int. Low
ABE Int. High
(Adult Sec. Ed. Low)
Adult Sec. Ed High
ESL Beg. Lit.
ESL Beginning
ESL Int. Low
ESL Int High
ESL Low Adv.
ESL High Adv.

Attendance Key
▓ Testing
▓ Weekend
H    Holiday
N    No Class
E    Excused Absence
U    Unexcused Absence
X    Out of Program
GED  Passed Exam

When used for any level of ABE, ESL, or GED, the monthly total number of hours of attendance should be rounded whole numbers. Daily entries of less than one hour should be indicated in half hour intervals.

60  Yearly Total

Dear Mr. or Madam,

My name is Tasha A. Brown I am a Medical Assistant of two years in a medical office that I am currently employed at. I am writing regarding Mizrain Gonzalez Jr. and in what way I am associated with Mr. Gonzalez.

I have known Mizrain now for 15years. I first met him at a church that our families use to attend; Mizrain and I lived in the same neighborhood and went to the same junior high and high schools. We became really good friends. Later on as we got a little older, after many years of being friends we took our friendship to the next level. We have been a couple for 6years, engaged now for 1year and have a beautiful son that will be 2years old in July.

Some of the roles Mizrain takes on in my life would be those of the friend, the lover, and the motivator just to name a few. He is someone I can rely on someone I can confide in and someone that makes it just a bit easier to make those hard decisions when life gets just a little complicated. He is very supportive in my personal goals and dreams. He is strong when I am weak he is calm when I am anxious and he is the reason why I get happy when I am sad. He prays with me and for me I love and respect him very much.

Mizrain is the proud father of two wonderful children, his first born from a prior relationship Reina who is 7years old and my son Mizrain the 3rd. Mizrain is trying to provide his children lives that he never had. He wants to expose them to a positive environment, quality time and opportunities that were not available to him growing up. Mizrain has made it obvious that his children are priority in his life and has expressed nothing but love, patience, and compassion for them both. He only has their best interest in mind.

To be completely honest, I am finding it just a little difficult to sit and put together a letter like this, because I understand that Mizrain has made mistakes and now he has to pay the consequence of those mistakes. I am not trying to make it seem like he is a victim of society or that he had no other options. I just want for someone, anyone to realize that he really is not a bad person. He is a good man has a good heart he just took the harder path in life he has been through a lot. Not everyone can learn off of one mistake or learn off of the mistakes of others. He really has made an effort to be a better person. He has taken steps like going to night school to get his GED, going to church, holding a construction job for a year, taking on a seasonal job at a tax office and working odd jobs with family members. He also makes it clear to younger family members, anyone that he may have even the smallest influence on, or anyone that listens that no matter what he does, they should stay in church stay in school be the best that they can be. He is a lot of things to a lot of people he did do negative but all he showed was positivity. He is missed and loved we will pray for him and leave it in God's hands. I thank you for the opportunity to share some of this information God Bless.

Sincerely,



March 27, 2008

To Whom It May Concern:

My name is Esmeralda I. Gonzalez and my brother is Mizrain Gonzalez, DOB 8/9/1982. Now, I know that he had made mistakes in the past and I'm not trying to say that he is an angel and has no faults. I just wanted to shed some light on his personality and his character. My whole life my brother had been a mentor to myself, my younger sister and my other older brother. Yes he/we had a tough up bringing but he is still a good person with good intentions. My brother did not take another persons life that I thank god for, but I understand that he has to take the consequences of his own actions. My brother is a good person if I had ever had a problem he was always more that willing to help. I have always looked to brother for advice that he did give me because I was his sister and a female. But he would also encourage me to think for myself and never depend on anyone but myself. When it came to family he did not want me or any of my other siblings to needs something he always made us aware that needs and wants were two different things. He is, was and always will be family oriented and always put his family first. Truthfully I wouldn't change my brother because he has made me who I am. I just hope you please give him a second chance at freedom. And help him to understand how important that is. Thank you for taking time out to read my letter. Again I thank you.

Sincerely,

*Esmeralda I. Gonzalez*

Esmeralda I. Gonzalez

To whom it may concern;

    My name is Jackie Gonzalez, I am 22 years of age and a CEA for a cable company. As you may know I am also the youngest sibling of Mizrain Gonzalez. I have come to understand that my brother has made mistakes that have placed him in isolation, from his family and friends. However this does not mean he is a bad influence.

    Growing up w/ my family wasn't perfect. But I am happy to say Mizrain was there to make hard times a bit easier. When I was sad or upset I always ran to him and he would give me the advise I needed to get over my situations. Despite his own mistakes, he would always inform me to be above my negative surroundings and live a better life, if not normal. I respect him as a big brother but as a best friend.

    Not only do I cherish his time and presence but so does our entire family. Because of Mizrain, our family has grown together. Whether he single handed scheduled family dinners once a month including everyone from 2nd cousins, uncles and aunts to grandparents. Or he is celebrating one of his kids birthdays, using is inner entertainer to make sure everyone wanted to join in on the fun even our grandmother.

    Since Mizrain has been gone I can't call my bestfriend to let him know how good I have been doing. Our family isn't the same or as interactive. Yet we always talk about Mizrain and the good he has done for each of us. He is the butt of our every joke and the reason we smile and because he is not here, neither are the smiles.

    If he thinks no one is proud of him or that no one cares for him, he'd be wrong. Not a day goes by that he isn't needed or wanted. Despite his flaws and faults he can conquer them. We love him, miss him and will support him in leaving any bad lifestyles behind. The sooner he gets home is the sooner it will feel like a home.

                                                      Sincerely,

                                                  Jackie Gonzalez

Jackie Gonzalez

609 Maryland Avenue

Wilm, De. 19805

(302)250-0642

3/24/08

To whom it may concern;

Please accept this letter in behave of my nephew Mizrain Gonzalez, Jr. Mizrain is a very loving and devoted father to his children. A men that really takes the time to educate and instruct his children in the right path. Even though, he (Mizrain) has made mistakes of his own, Mizrain wishes for his children and his baby cousin of 11 years old not to go through what Mizrain has been through. The Children means a lot to my nephew they mean the world to him. I know in the kids heart they are missing their father and the quality family time they would share with eachother. Mizrain has a huge heart for his family and has always gone out of his way to be there for us, through thick-n-thin no matter what the circumstances has been.

Mizrain cares for his family as much as we care for him. Stress has really taken a huge affect in our lives worrying about Mizrain. We have not giving-up praying for Mizrain and we are waiting for God to do He's part in this situation. I believe this has been a heck of an expierence for my nephew Mizrain which I know he has learn from his dum & stupid wrong turns in life.

Please if there is anything you can do for my nephew. We would greatly appreciate it. We need Mizrain, his children most of all need him.

Thank you for this opportunity and thank you for all you do in his behave. May God continues to bless you and yours.

Respectfully yours

Judith I. Rodriguez
Community Relations Advocate

March 27, 2008

Iglesia Evangelistica Jesucristo Es El Señor, Inc
10 West Hazedell Ave
PO BOX 959
New Castle, DE 19720
Alejandro Lind

Re: Reference Letter Mizrain Gonzalez Jr.

To Whom It May Concern:

This is to confirm that I have known Mr. Mizrain Gonzalez for over 4 years both as a customer of my business and a participant of the church. My interaction with Mr. Mizrain has always been positive and has been a pleasure to deal with him.

Based on his current situation we are currently praying for Mr. Mizrain well being and knowing that this has been a learning experience for him. This has been a tough situation for him as well as his family and love one.

If you need any further information I would be more than happy to provide it. I can be contacted at 302-777-0101. May God Bless you.

Sincerely,

Pastor Alejandro Lind

# PROGRESO LATINO

1401 W. 4TH. STREET
WILMINGTON DE 19805
TEL: 302-543-4176

March 27, 2008

To whom it may concern:

My name is Luz Divina Diaz; I take this time to talk to you on behalf of a young man who is like a son to me. I saw this young man born and grow up to become a man and a father. MIZRAIM GONZALEZ is the son of my best friend, my sister I love this kid like if he was my own. I can truly say that I have known him since birth and I know that he is a very good son and father, if given the opportunity he will make you proud, yes he made some mistakes that he regrets now. But that is what made him change his way and work to be a better person. Please take in consideration his own child, she has suffer enough by not having her daddy with her all this time, she need her daddy and his mother need her son "Jackie" that is how we call his mother is a very good mother I always use her as an example to others because she was always with her children you will never see her kid nowhere without the mother but unfortunately they grow up and claim their independency and there is nothing we can do because they consider themselves adults. Jackie did what a good parent do raise their children to become decent citizen, but if they choose to go the other way is not because of the parents. This mother is hurting because of this situation she can't sleep, eat or have a normal life her nerves are so bad that she can't control it. Please I ask of you to help this family by not adding more time to his sentence he has good behavior time and he deserves a break. I pray to the Lord that you consider my request and grant a decision in favor of my boy.

Thank you and may God Bless you and your love ones.

Truly yours

*Luz Divina Diaz*